## John A. Campbell, J. F. Reid and William Newgass, Partners, etc., v. Robert I. Greer.

1. BUSINESS NAMES AND STYLES—*Designation Immaterial.*—A person may carry on a business and have his accounts kept in any name or style he may choose, and still. be the legal as well as the equitable owner of his business and accounts.

2. OWNERSHIP—*A Question of Fact.*—The ownership of the business and of the money in a business enterprise is a question of fact to be determined, not from the style of the book accounts alone, but from all the evidence in the case.

3. PRACTICE—*Court Sitting as a Jury.*—When the parties waive a jury and the cause is tried by the court, and proper propositions are duly submitted to be held as law of the case, the judgment of the court will be affirmed or reversed by the same rules that govern when the facts are tried by a jury.

Assumpsit.—Trial in the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFFER, Judge, presiding. Finding and judgment for plaintiff; appeal by defendant. Heard in this court at the August term, 1898. Reversed and remanded. Opinion filed March 10, 1899.

WISE & McNULTY, attorneys for appellants.

GLASS & BOTTENBERG and KRAMER, CREIGHTON & SHAEFFER, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in assumpsit by appellee against appellants, commenced in the County Court of St. Clair County. The venue was changed by agreement of parties to the Circuit Court of St. Clair County, where jury was waived and cause tried by the court, resulting in a finding and judgment in favor of appellee and against appellants for $301.80, with costs.

The declaration contains four counts. The first count alleges an indebtedness of $600 from the defendants to plaintiff for goods, wares and merchandise sold by plaintiff to defendants. The second count alleges the sale of goods, wares and merchandise by plaintiff to the defendants; and

defendants agreed to pay the plaintiff what the goods, wares and merchandise were reasonably worth, and they were worth $600. The third count is the common money count for money lent and advanced, paid, laid out and expended, and had and received. The fourth count is that the plaintiff and defendants had an accounting and settlement together by which defendants owed plaintiff $600.

Attached to the declaration is an account as follows: February 1, 1898, to balance on account for sale of horses, $600.

Plea of defendants, general issue, and notice with same that the account sued on in this case is not the account of R. L. Greer, the plaintiff herein, but was the account of Thomas Maxwell, Sr., and that Greer had no interest in the account, or any right to collect the proceeds or money due thereon, or any right to sue on said account. Also notice that the defendants have a set-off against said account sued on in this suit. The account is not now, and never was the account of Greer, but has always been the account of Thomas Maxwell, Sr., and Thomas Maxwell, Sr., was, at the commencement of this suit, and still is indebted to the defendants in an amount equal to the said claim of the plaintiff herein, which claim is the claim of Thomas Maxwell, Sr., and they will set off the indebtedness of Thomas Maxwell, Sr., against the claim plaintiff has sued on.

Appellants were commission merchants engaged in the business of selling horses and mules, on consignment, at the National Stock Yards in East St. Louis. Appellee and one Thomas Maxwell, Sr., were engaged in the business of buying horses and mules in the country, and shipping them to the National Stock Yards, there to be sold.

What the contract, or arrangement between appellee and Maxwell was, is in dispute. However, neither party, in this case, claims that they were partners.

Appellants claim that appellee was to furnish some money for the business, as a loan to Maxwell, and that Maxwell was to pay appellee $40 per month for his services, and that after appellee had furnished the money, he was to pay him

$10 per month additional for the use of the money, and that the entire business belonged to Maxwell.

Appellee contends that he was to furnish the money for the business; that the entire business belonged to him; that Maxwell was to have for his services what profits might remain after appellee had been reimbursed all the money he had invested, and taken out $50 per month for his own services. There is evidence in the record tending to support each of these positions.

They began business by consigning their shipments to a commission merchant by the name of John Kirk at the National Stock Yards, East St. Louis.

During the whole time they were in business together Maxwell managed the business at the National Stock Yards end. They continued to consign to Kirk until the 7th of November, 1897, when Maxwell telegraphed appellee at Bushnell to ship a car load of horses to appellants, which he did. This consignment appears of date of November 10, 1897, and on that day the account in question was opened. Both Maxwell and appellee were in the place of business of appellants when the account was opened. Appellants contend that they understood that this account was in fact Maxwell's account, but kept in appellee's name to serve some purpose of Maxwell, and that appellee assented to this arrangement at the time the account was opened. They also claim that appellee told them the business and the account belonged to Maxwell; that appellee said he would not assume any responsibility for it; that he had loaned Maxwell some money and was working for him by the month. Appellee denies all this, and there is evidence in the record tending to support both appellants' claims and appellee's denials.

Upon the trial appellants submitted to the court, among many others, the following propositions to be held as law in the decision of the case, all of which the court held:

" 1.    The court holds that, as a matter of law, the money in controversy being in the plaintiff's name on the books of the defendants, the legal title is in him."

" 3.   The court holds that the defendants could not take
money standing on their books in the name of R. L. Greer
and apply the same on the accounts of Thomas Maxwell
and one Hubbard, for the reason that there is no privity
between the parties and no mutuality in the accounts."

The holding of the above propositions to be law ap-
plicable to this case, was error.   The fact that the account
was in appellee's name on the books of appellants raises a
presumption in favor of appellee, and is *prima facie* proof
that he owned the account; but it is not conclusive; it does
not, "as a matter of law," make appellee the legal owner
of " the money in controversy."   Accounts of this character
are not commercial paper, like notes, bills of exchange,
drafts and checks.

One may carry on business and have his accounts kept in
any name or style he may choose, and still be the legal as
well as the equitable owner of his business and accounts.
The ownership of the business and of " the money in con-
troversy," was a question of fact to be determined, not
from the style of the book accounts alone, but from all the
evidence.

Whether, in this case, appellants could " take money
standing on their books in the name of R. L. Greer and
apply the same on accounts of Thomas Maxwell and one
Hubbard," depends on the weight of the evidence.   Whether
there is privity between the parties and mutuality in the
accounts, are not, in this case, questions of law, but are ques-
tions of fact.   Individually and as a whole, each and all the
propositions held by the court on behalf of appellee, are sub-
ject to just criticism.   They evidence a misconception of the
true issues involved in the case, as developed on the trial.
Appellants also submitted to the court many propositions,
to be held as law in the decision of the case, all of which the
court refused; among them were the following :

" 8.   The court holds the law to be, that if the account
was kept on the books of the defendants, known as the
Greer account, and that the plaintiff was the person in
whose name such account was kept, yet, as a fact, while the
said account was so kept on defendants' books in plaintiff's
name, the said plaintiff was not the real owner of the

account, or entitled to the balance shown on said account, but that said account belonged to one Thomas Maxwell, who was the owner thereof, and entitled to the balance shown in said account; and that the said Greer was but an employe of said Maxwell, paid by the month, and that said account was only kept in the plaintiff's name through an agreement entered into between the said defendants and said Maxwell at the time said account was opened, and afterward agreed to by the plaintiff, and that the defendants are responsible to the said Maxwell for whatever balance is shown in said account, then the plaintiff can not recover."

" 9. The court holds the law to be, if Thomas Maxwell, desiring to open an account with the defendants, but not wishing to have that account appear on the books of the defendants in his own name, made an agreement with the defendants by which said account was to appear in their books in the name of R. L. Greer, the plaintiff, and that said R. L. Greer was a mere employe of said Maxwell, and told the defendants that the said account was Maxwell's, and that he, Maxwell, was liable for the losses and profits; and that the defendants, acting upon the said statements of Maxwell, and the said statements of Greer, treated and considered said account as Maxwell's account; and that the defendants do not owe said Maxwell on said account anything, on account of certain set-offs which they have against him, then the plaintiff can not recover."

These propositions are substantially correct and ought to have been held. The state of the record is such that we are not called upon to discuss the weight of the evidence, nor to determine on which side of the issues raised on the trial, the preponderance lies. When the parties waive a jury and the cause is tried by the court, sitting as a jury, and proper propositions are duly submitted to the court to be held as law in the decision of the case, then the judgment of the Circuit Court will be affirmed or reversed by the same rules that govern when the facts are tried by a jury.

Another branch of this case arises out of a settlement had between appellee and Maxwell. On the 21st day of December, 1897, at Rushville, they had a settlement, at which it was agreed that Maxwell owed appellee $563.19. Upon consummation of this settlement Maxwell drew his draft as follows:

" 563.19.                    RUSHVILLE, Ill., Dec. 21st, 1897.
    At sight, pay to the order of Bank of Rushville, for R. L.
Greer, five hundred and sixty-three and 19-100 dollars, with
exchange and charges, value received, and charge to the
account of
                                    THOS. MAXWELL, SR.
    To Campbell, Reid & Newgass, Nat'l Stock Yards, Ill.
Indorsed, R. L. Greer."

The following letter was attached to the draft:

                              " RUSHVILLE, ILL., Dec. 21st, 1897.
MESSRS. CAMPBELL, REID & NEWGASS, East St. Louis, Ill.
    GENTLEMAN:—Mr. Greer and I have settled our matters.
Please pay the enclosed draft, and transfer any balance that
may be to his account to my account.
                                    THOS. MAXWELL, SR."

This draft was transmitted to East St. Louis for collec-
tion, but before it reached appellants, or they had received
any notice of it or of the settlement, Maxwell had under-
taken to repudiate the settlement, and had ordered appellants
not to pay the draft.    They did not pay it, and in the course
of a correspondence which followed between appellee and
appellants, not fully disclosed by the record, appellants on
January 7, 1898, wrote to appellee as follows:

            " NATIONAL STOCK YARDS, ILL., Jan. 5, 1898.
ROB'T L. GREER, Esq., Rushville, Ill.
    DEAR SIR:—Replying to your letter of the 2d inst., we
beg to say that we do not yet know to whom this money
you speak of and the horses and mules belong.    We are
ready to account for this business as soon as you and Mr.
Maxwell agree between yourselves.    We do not feel that
we can pay it to you until Mr. Maxwell tells us to do so, as
the business has always been done upon his order.    The
balance of credit in this account with everything sold is
$296.30.
    Awaiting your further favors, we remain,
                Yours truly,
                    CAMPBELL, REID & NEWGASS,
                              per W. C. KEELER."

Upon receipt of this letter by appellee the following draft
was drawn:

" 296.30.                    RUSHVILLE, ILL., Jan. 7th, 1898.
    At sight, pay to the order of Bank of Rushville, for R. L.

Greer, two hundred ninety-six and 30-100 dollars, with exchange and charges, value received, and charge the same to Thos. Maxwell, Sr.

To Campbell, Reid & Newgass, Nat'l Stock Yards, Ill."

This draft was in due course presented to appellants for payment, and payment of it was also refused.

The drafts are both payable to the order of Bank of Rush-ville, and not indorsed by it.   True they are payable to the Bank of Rushville for use of appellee, but the legal title to them is in the Bank of Rushville.   Ridgely National Bank v. Patton & Hamilton, 100 Ill. 479.

If this account belonged to Maxwell before the settlement, then it was not " transferred and assigned " to appellee by the settlement, draft, and letter of Maxwell attached to the draft.

The judgment of the Circuit Court is reversed and the cause remanded.